FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA
2025 NOV -6  PM 3:45
OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>SHERMAN R. WADE,<br><br>　　　　　Defendant. | 8:25CR20<br><br>PLEA AGREEMENT |

IT IS HEREBY AGREED between the plaintiff, United States of America, through its counsel, Matthew R. Molsen, Acting United States Attorney and Kathryn A. Pflug, Assistant United States Attorney, and defendant, SHERMAN R. WADE, and Jason E. Troia, counsel for defendant, as follows:

I

**THE PLEA**

A.　CHARGES.

Defendant agrees to plead guilty to Counts I and II of the Superseding Indictment. Count I charges a violation of Title 18, United States Code, Sections 2113(a), (d), and (e) and 2. Count II charges a violation of Title 18, United States Code, Section 924(c)(1)(A) and 2, and punishable under Title 18 United States Code, Section 924(c)(1)(C).

B.　In exchange for the defendant's plea of guilty as indicated above, the United States agrees as follows:

　　　　1.　At the time of sentencing in this matter, the United States will move to dismiss the Amended Petition for Offender Under Supervision (Filing No. 95) in Case No. 8:04CR462.

II

**NATURE OF THE OFFENSE**

A.　ELEMENTS EXPLAINED.

Defendant understands that the offenses to which defendant is pleading guilty have the following elements:

1

*Count I*

1. The defendant took money from the person and presence of another, that is an employee of U.S. Bank, while that money was in the care or custody of U.S. Bank;
2. Such taking was by force and violence, or by intimidation;
3. The defendant did put in jeopardy the life of another person, that is an employee of U.S. Bank, by use of a dangerous weapon while taking money from U.S. Bank;
4. The defendant forced a victim employee to accompany them without the consent of the victim employee while taking money from U.S. Bank; and
5. The deposits of U.S. Bank were then insured by the Federal Deposit Insurance Corporation.

*Count II*

1. The defendant committed the crime of Bank Robbery described in Count I of the Indictment;
2. The defendant knowingly used and brandished a firearm, during and in relation to that crime;
3. The guns used in the bank robbery were firearms under federal law.

B.   ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS.

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed.

1. That sometime before July 3, 2024, defendant WADE, and another individual known to WADE and the Grand Jury ("SUBJECT 2"), discussed and planned to rob a bank. WADE and SUBJECT 2 selected the U.S. Bank branch located at 8905 Maple Street, Omaha, Nebraska, in the District of Nebraska, because it was somewhat set back from a main street and therefore less visible. In the early morning hours on or about July 3, 2024, WADE and SUBJECT 2 walked to the parking lot of the U.S. Bank branch at 8905 Maple Street. Once there, WADE and SUBJECT 2 concealed themselves from view for several hours, waiting for a bank employee to arrive. Around 8:45 AM on July 3, 2024, Victim 1, a female employee of U.S. Bank, arrived by car to the parking lot of the bank branch. As Victim 1 approached the employee entrance at the back of the bank building, SUBJECT 2 and WADE came across the parking lot and confronted Victim 1.

2

SUBJECT 2 pointed a silver handgun at Victim 1 and he and WADE forced Victim 1 to go inside the bank. SUBJECT 2 and WADE then walked Victim 1 to the teller area. SUBJECT 2 and WADE told Victim 1 to open the bank vault, but Victim 1 said she could not do so on her own as it takes two employee codes to open the vault. SUBJECT 2 and WADE made Victim 1 stand with her hands in the air until a male bank employee, Victim 2, arrived and entered the bank. WADE and SUBJECT 2 confronted Victim 2, who claimed he did not have a code for the vault. WADE and SUBJECT 2 put Victim 2 on the ground and zip tied his hands behind his back. SUBJECT 2 went through the teller drawers while WADE watched Victims 1 and 2. SUBJECT 2 and WADE eventually put Victim 1 on the ground and zip tied her hands behind her back like they had Victim 2's hands. During the robbery, WADE pulled a handgun out of his sweatshirt pocket and used it to control the victim employees. Victim 3, a second male employee of U.S. Bank, entered the bank. WADE and SUBJECT 2 forced Victim 3 to open the bank vault using his own code and Victim 1's employee code. WADE and SUBJECT 2 forced Victim 3 to enter the vault with them, and they started filling a large duffle bag with cash. WADE and SUBJECT 2 then left the vault, locking Victim 3 inside, and took car keys from Victims 1 and 2. WADE and SUBJECT 2 fled the bank, attempting to steal Victim 1's car. Unable to steal Victim 1's car, WADE and SUBJECT 2 shifted course and stole Victim 3's red Acura MDX. WADE and SUBJECT 2 drove the stolen Acura MDX to a parking lot outside an apartment complex at 6016 Birch Street, Omaha, Nebraska. WADE approached a duplex residence across the street and asked a female known to him for a ride in exchange for gas money. During this time, SUBJECT 2 walked around the female's residence and took off clothing he wore during the robbery, putting it and items belonging to the victim employees in a trash can and in a nearby area of plants. A few minutes later, WADE and SUBJECT 2 got into the vehicle of the female known to WADE, who then dropped WADE and SUBJECT 2 off by an apartment complex near 90th and Bedford Streets in Omaha, Nebraska. SUBJECT 2 and WADE used the apartment of an associate to split up the stolen cash between the two of them. U.S. Bank reported its loss from the robbery was $192,531.00. During the robbery, WADE and SUBJECT 2 put in jeopardy the lives of the victim employees by using dangerous weapons, namely handguns, to intimidate and force the victim employees to comply, pointing the guns at the victim employees. WADE and SUBJECT 2 also forced employees to accompany them without the employees' consent during the robbery, including forcing Victim 1 to walk from outside the bank into the bank building and

to the teller area, and forcing Victim 3 to the teller area and then inside the vault. At the time of the robbery on July 3, 2024, the deposits of U.S. Bank were insured by the Federal Deposit Insurance Corporation.

2. That WADE and SUBJECT 2 committed the crime of Bank robbery as charged in Count I of the Indictment (and described herein at Sec. II, Paragraph B.1). During and in relation to that crime, WADE and SUBJECT 2 knowingly used firearms, including displaying and brandishing the firearms. Specifically, WADE and SUBJECT 2 displayed all or part of the firearms in order to intimidate the victim employees, including pointing the firearms at employees while they forced the employees to comply with their demands. The handguns used by SUBJECT 2 and WADE during the robbery were firearms under federal law.

3. WADE was previously convicted on or about May 3, 2006, of one count of bank robbery, in violation of Title 18, United States Code, Sections 2113(a) and 2, and two counts of brandishing a firearm while robbing a bank, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 2, in the United States District Court for the District of Nebraska, Case No. 8:04CR462.

## III

## PENALTIES

A. COUNT I. Defendant understands that the crime to which defendant is pleading guilty carries the following penalties:

1. A mandatory minimum 10 years and up to life in prison;
2. A maximum $250,000 fine;
3. A mandatory special assessment of $100 per count; and
4. A term of supervised release of not more than 5 years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release.
5. Possible ineligibility for certain Federal benefits.

C. COUNT II. Defendant understands that the crime to which defendant is pleading guilty carries the following penalties:

1. A mandatory minimum 25 years and up to life in prison, consecutive to any other sentence imposed;

4

2. A maximum $250,000 fine;

3. A mandatory special assessment of $100 per count; and

4. A term of supervised release of not more than 5 years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release.

5. Possible ineligibility for certain Federal benefits.

## IV
## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE
## DISTRICT OF NEBRASKA

This plea agreement is limited to the United States Attorney's Office for the District of Nebraska, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

## V
## SENTENCING ISSUES

A. SENTENCING AGREEMENTS.

Although the parties understand that the Guidelines are advisory and only one of the factors the court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments and Departures (if applicable). Unless otherwise stated, all agreements as to sentencing issues are made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1. If the defendant is found to be entitled to an offense level reduction under U.S.S.G. 3E1.1(a) for acceptance of responsibility, the United States hereby moves that the court reduce the defendant's offense level by one additional level, pursuant to U.S.S.G. § 3E1.1(b), if that paragraph otherwise applies.

2. As to Count I, Bank Robbery, the following apply:
   a. Base offense level of 20 under USSG § 2B3.1(a);
   b. 2-level increase for property of a financial institution under USSG § 2B3.1(b)(1);
   c. 2-level increase for physical restraint under USSG § 2B3.1(b)(4)(B);

5

       d. 2-level increase for loss more than $95,000 under USSG § 2B3.1(b)(7)(C).

B. <u>RESTITUTION.</u> Defendant agrees to the following regarding Restitution:
   a. The amount of restitution ordered by the Court shall include all relevant conduct, including, but not limited to, all charged and uncharged criminal conduct alleged in the Indictment, and not limited to the count(s) of conviction.
   b. Defendant shall pay restitution in the amount determined by the Court at sentencing.
   c. Restitution and Assessment payments shall be made payable to the "U.S. District Court Clerk" as directed in the Judgment.
   d. The District Court Clerk will subsequently disburse Defendant's restitution payments to the following victim(s) for losses in the following amounts:

| Victim | Victim Loss Amount |
|---|---|
| U.S. Bank | $192,531.00[1] |

   e. Court imposed monetary penalties are *due immediately* and subject to *immediate* enforcement by the United States. 18 U.S.C. § 3613.
   f. Any Court ordered schedule for restitution payments is merely a *minimum* payment obligation, and does not limit the methods by which the United States may immediately enforce the judgment in full, including but not limited to enrollment in the Treasury Offset Program (TOP) (*see* 26 U.S.C. § 6402(d); 31 U.S.C. §3720A; 31 U.S.C. § 3716) and garnishment of available funds, wages, or assets (*see* 18 U.S.C. §§3613, 3664(m)).
   g. If incarcerated, Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a payment schedule.
   h. Defendant will provide all of defendant's financial information to the United

---

[1] During execution of a court authorized search warrant of WADE's apartment on July 4, 2024, $82,797.00 of the cash taken from U.S. Bank was recovered by law enforcement and seized as evidence. The cash remains in the custody of the Omaha Police Department as evidence and will be maintained as evidence throughout the pendency of this case. The United States anticipates requesting an order from this Court to turn over the recovered cash to the Clerk of the U.S. District Court and then to victim U.S. Bank following the conclusion of the criminal prosecution of WADE and any subsequently charged accomplice. Accordingly, upon payment being made to U.S. Bank, via the Clerk of the U.S. District Court, in the amount of $82,797.00 at a later date, the restitution owed to U.S. Bank would be decreased by that amount.

6

States and the Probation Officer, and agrees, if requested, to participate in a pre-sentencing debtor exam. Defendant will fully and truthfully disclose all assets and property in which Defendant has any interest, or over which Defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party.

i. At the request of the U.S. Attorney's Office (USAO), Financial Litigation Program (FLP), Defendant will promptly execute and return a fully completed and executed Financial Disclosure statement under oath, a Tax Information Authorization Form 8821, and a Request for Transcript of Tax Return Form 4506-T. Defendant also agrees to provide the USAO FLP copies of financial information that Defendant submitted to the U.S. Probation Office.

j. Defendant authorizes the USAO FLP to obtain Credit Reports concerning Defendant to enable the USAO to evaluate Defendant's ability to satisfy any financial obligations and monetary penalties imposed as part of the sentence, and will execute any Release for such information upon request.

k. Defendant understands that compliance with USAO requests for financial information will be taken into account when the United States makes a recommendation to the Court regarding Defendant's acceptance of responsibility at sentencing. Defendant's failure to timely and accurately complete and sign the financial statement and any update thereto, may, in addition to any other penalty or remedy, indicate a failure to accept responsibility.

l. Defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until Defendant has satisfied restitution in full.

m. Defendant certifies that Defendant has not transferred assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Defendant promises that Defendant will make no such transfers in the future.

n. If the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which Defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event

7

such misrepresentation or nondisclosure changes the estimated net worth of Defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, enforce the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, including enforcement of 100 percent of the value of any previously undisclosed asset. Defendant agrees not to contest enforcement against of such asset or property. If the United States opts to be relieved of its obligations under this plea agreement, Defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

C.  ACCEPTANCE OF RESPONSIBILITY.

Notwithstanding paragraph A above, the United States will not recommend any adjustment for Acceptance of Responsibility if defendant:

1. Fails to admit a complete factual basis for the guilty plea at the time it is entered, or
2. Denies involvement in the offense, gives conflicting statements about that involvement, or is untruthful with the court or probation officer, or
3. Fails to appear in court, or
4. Engages in additional criminal conduct, or
5. Attempts to withdraw the guilty plea, or
6. Refuses to abide by any lawful court order, or
7. Contests or assists any third party in contesting the forfeiture of property(ies)seized or forfeited in connection with this case.

**The parties further agree the defendant will make no "blanket" objections to the criminal history calculation (specific objections based on stated grounds are permitted). Objections to criminal history on the basis that the defendant was not the person who was convicted of the offense(s) described in the presentence investigation report or on the basis that the defendant was not represented by counsel in connection with such conviction(s), if determined to be unfounded, are evidence the defendant has not accepted responsibility and the parties agree no credit for acceptance of responsibility should be given.**

D.  ADJUSTMENTS, DEPARTURES & REDUCTIONS UNDER 18 U.S.C. § 3553.

The parties agree that defendant may not request or recommend additional downward adjustments, departures, including criminal history departures under U.S.S.G. § 4A1.3, and sentence reductions under 18 U.S.C. § 3553(a), and that the United States will oppose any such

downward adjustments, departures, and sentence reductions not set forth in Section V, paragraph A above.

E.    CRIMINAL HISTORY.

The parties have no agreement concerning the defendant's Criminal History Category, except that if defendant is determined to be a Career Offender, the parties agree that the defendant is automatically a Criminal History Category VI pursuant to U.S.S.G. § 4B1.1(b).

F.    "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION.

The parties agree that the facts in the "factual basis" paragraph of this agreement, if any, are true, and may be considered as "relevant conduct" under U.S.S.G. § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

The parties agree that all information known by the office of United States Pretrial Service may be used by the Probation Office in submitting its presentence report, and may be disclosed to the court for purposes of sentencing.

G.    RECOMMENDATION REGARDING CUSTODY.

The parties will recommend that defendant be sentenced to a sentence of imprisonment within the advisory guideline range as calculated by Court at the time of sentencing.

## VI

## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

The defendant hereby knowingly and expressly waives any and all rights to appeal the defendant's conviction and sentence, including any restitution order in this case, and including a waiver of all motions, defenses, and objections which the defendant could assert to the charges or to the Court's entry of Judgment against the defendant, and including review pursuant to 18 U.S.C. § 3742 of any sentence imposed, except:

      (a) As provided in Section I above, (if this is a conditional guilty plea); and

      (b) A claim of ineffective assistance of counsel.

      (c) A right to file a motion under Section 3582(c)(1)(A);

          1. the general right to file a compassionate release motion;

          2. the right to file a second or successive such motion; or

          3. the right to appeal the denial of a compassionate release.

The defendant further knowingly and expressly waives any and all rights to contest the defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255, except:

(a) The right to timely challenge the defendant's conviction and the sentence of the Court should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the charge to which the defendant is agreeing to plead guilty fails to state a crime.

(b) The right to seek post-conviction relief based on ineffective assistance of counsel.

If defendant breaches this plea agreement, at any time, in any way, including, but not limited to, appealing or collaterally attacking the conviction or sentence, the United States may prosecute defendant for any counts, including those with mandatory minimum sentences, dismissed or not charged pursuant to this plea agreement. Additionally, the United States may use any factual admissions made by defendant pursuant to this plea agreement in any such prosecution.

## VII

## BREACH OF AGREEMENT

Should it be concluded by the United States that the defendant has committed a crime subsequent to signing the plea agreement, or otherwise violated this plea agreement, the defendant shall then be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted. Any such prosecution(s) may be premised upon any information, statement, or testimony provided by the defendant.

In the event the defendant commits a crime or otherwise violates any term or condition of this plea agreement, the defendant shall not, because of such violation of this agreement, be allowed to withdraw the defendant's plea of guilty, and the United States will be relieved of any obligation it otherwise has under this agreement and may withdraw any motions for dismissal of charges or for sentence relief it had already filed.

## VIII

## SCOPE OF AGREEMENT

A. This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

B.  By signing this agreement, the defendant agrees that the time between the date the defendant signs the agreement and the date of the guilty plea will be excluded under the Speedy Trial Act. The defendant stipulates that such period of delay is necessary in order for the defendant to have opportunity to enter the anticipated plea of guilty, and that the ends of justice served by such period of delay outweigh the best interest of the defendant and the public in a speedy trial.

C.  The United States may use against the defendant any disclosure(s) the defendant has made pursuant to this agreement in any civil proceeding. Nothing contained in this agreement shall in any manner limit the defendant's civil liability which may otherwise be found to exist, or in any manner limit or prevent the United States from pursuing any applicable civil remedy, including but not limited to remedies regarding asset forfeiture and/or taxation.

D.  Pursuant to 18 U.S.C. § 3013, the defendant will pay to the Clerk of the District Court the mandatory special assessment of $100 for each felony count to which the defendant pleads guilty. The defendant will make this payment at or before the time of sentencing.

E.  By signing this agreement, the defendant waives the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d). The defendant may only withdraw the guilty plea in the event the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5). Furthermore, defendant understands that if the court rejects the plea agreement, whether or not defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

F.  This agreement may be withdrawn by the United States at any time prior to its being signed by all parties.

## IX

## MODIFICATION OF AGREEMENT MUST BE IN WRITING

No promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.

**X**

**DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT**

By signing this agreement, defendant certifies that defendant read it (or that it has been read to defendant in defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

UNITED STATES OF AMERICA
MATTHEW R. MOLSEN
Acting United States Attorney

11/6/2025
Date

KATHRYN A. PFLUG
ASSISTANT U.S. ATTORNEY

9/22/2025
Date

SHERMAN R. WADE
DEFENDANT

9/22/2025
Date

JASON E. TROIA
COUNSEL FOR DEFENDANT

12